USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/17/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA :

       - against - : **MEMORANDUM DECISION**

PERSIO TORRES-NUNEZ, : 87 Cr. 419 (DC)

          Defendant. :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:** PERSIO TORRES-NUNEZ
Defendant Pro Se
Fed. Reg. No. 17194-054
Federal Correctional Institution
P.O. Box 779800 -- "A" Unit
Miami, Florida 33177-0200

**CHIN, District Judge**

    Defendant Persio Torres-Nunez, proceeding pro se, moves for a reduction of his sentence in light of the recent retroactive amendments to the United States Sentencing Guidelines (the "Guidelines") applicable to crack cocaine offenses. For the reasons that follow, the motion is denied.

### BACKGROUND

**A. The Facts**

    Beginning in June 1982, Santiago Luis Polanco-Rodrigues and others participated in a narcotics trafficking organization in the Washington Heights area of Manhattan. (IR at 8).[1] In the

---

[1] "IR" refers to an investigation report prepared by the Probation Department, dated (on page 9) October 16, 1987. "PSR" refers to the presentence report for Torres-Nunez in this case, dated (on page 9) July 8, 1988. "J&C" refers to the judgment and commitment order in this case. "Mot." refers to Torres-Nunez's instant motion.

summer of 1985, the organization expanded and began selling crack cocaine, under the brand name "Based Balls," in "massive quantities." (Id.). Several members of the organization carried weapons. (Id. at 9).

Torres-Nunez was "one of the most important street managers" in the organization, although he did not join the group until 1986. (PSR at 3). For most of 1986, Torres-Nunez was the "day" manager at an important "distribution point." (Id.). Crack was sold at this location twenty-four hours a day, seven days a week. (Id.). The organization operated until May 1987, when the indictment in this case was filed. (Id.). The Government believed that, in terms of level of culpability, Torres Nunez was in the second highest tier; the Government described him as "a long standing and significant street manager who supervised key distribution locations and extremely large quantities of 'crack.'" (Id. at 3-4; see also IR at 9).

### B. Prior Proceedings

Torres-Nunez and twenty-eight others were charged in a 58-count indictment in this case on May 14, 1987. (IR at 1-4). Following a jury trial, he was convicted on five counts: Count 1 (conspiracy to distribute powder and crack cocaine); Count 2 (continuing criminal enterprise); Count 25 (distribution and possession with intent to distribute crack cocaine); Count 36 (racketeering enterprise); and Count 37 (conspiracy to engage in a racketeering enterprise). (J&C; PSR at 2-3).

The presentence report noted that Torres-Nunez had previously been convicted of distributing cocaine within a

-2-

thousand feet of a school, for which he was sentenced by Judge Leonard B. Sand to four-and-a-half years' imprisonment. (PSR at 7). The presentence report also noted that Torres-Nunez had been in custody since January 9, 1987, when he was remanded. (Id. at 1).[2]

The presentence report did not determine a specific quantity of narcotics for which Torres-Nunez was responsible, as it noted only that he was involved in the sale and distribution of "massive amounts of cocaine." (Id.). The presentence report concluded with the following "recommendation":

> In light of the above, and especially considering the defendant's overall position in the hierarchy of this organization and the amount of drugs involved, we respectfully recommend that he be sentenced to a substantial period of imprisonment.

(Id. at 9).[3]

On July 29, 1988, Judge David N. Edelstein -- who had presided over the trial and thus was fully familiar with the evidence (id. at 3) -- sentenced Torres-Nunez to a total of sixty years' imprisonment, consisting of sixty years each on Counts 1

---

[2] Torres-Nunez's investigation report from his case before Judge Sand, No. 86 Cr. 918 (LBS), shows (at page 1) that he was found guilty in that case on January 9, 1987. Hence, it appears he was remanded following the guilty verdict in that case.

[3] The presentence report refers to "enclosed worksheets," which apparently included a computation of a "Guideline Sentence range" representing the "actual time to be served" if the case had been "a post-November 1[, 1987] Guideline Sentence case." (PSR at 9). The only worksheet attached to the presentence report, however, sets forth an estimate for "parole release." (PSR attachment).

-3-

and 2, thirty years on Count 25, and fifteen years each on Counts 36 and 37, with the sentences on Counts 25, 36, and 37 to be served consecutively to each other, and the sentences on Counts 1 and 2 to be served concurrently with each other and with the sentences on Counts 25, 36, and 37. (J&C).

On March 12, 2008, Torres-Nunez filed the instant motion under 18 U.S.C. § 3582(c)(2) and § 1B1.10(c) of the Guidelines for a reduction of his sentence. (Mot. at 1). In his motion, he contends that he was sentenced on February 6, 1987, to 470 months, and that his sentence was based on an offense level of 42 and a Criminal History Category of I. (Id. at 1-2). He requests that he be re-sentenced to 360 months. (Id. at 2).

## DISCUSSION

Effective November 1, 2007, the United States Sentencing Commission (the "Commission") amended the Guidelines to lower the guideline range for certain categories of offenses involving crack. On December 1, 2007, the Commission adopted an amendment to § 1B1.10 of the Guidelines authorizing, effective March 3, 2008, retroactive application of the amendment to the crack guidelines. See, e.g., United States v. Berroa, No. 05 Cr. 53 (JFK), 2008 WL 1741308, at *1 (S.D.N.Y. April 11, 2008).

In seeking a modification of his sentence now, Torres-Nunez relies on 18 U.S.C. § 3582(c)(2), which provides that:

> in the case of a defendant who has been
> sentenced to a term of imprisonment based on
> a sentencing range that has subsequently been
> lowered by the Sentencing Commission pursuant
> to 28 U.S.C. 994(o), upon motion of the

-4-

> defendant or the Director of the [BOP], or on
> its own motion, the court may reduce the term
> of imprisonment, after considering the
> factors set forth in section 3553(a) to the
> extent that they are applicable, if such a
> reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission.

Id. § 3582(c)(2).

Torres-Nunez's reliance on § 3582(c)(2) is misplaced and his motion for a reduction of sentence must be denied, for he is not eligible for a reduced sentence under the retroactive amendments to the Guidelines. Torres-Nunez was not sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Id.; see United States v. Argitakos, 862 F.2d 423, 424 (2d Cir. 1988) ("Section 3582(c) thus applies only where a defendant has been sentenced to a term of imprisonment based on a sentencing range under the Sentencing Guidelines that the Commission has subsequently lowered."). Indeed, he was not sentenced based on a sentencing range at all. He was not sentenced under the Guidelines, and he could not have been, as his conduct occurred from 1986 through January 9, 1987 (when he was arrested) -- before the effective date of the Guidelines. See id., 862 F.2d at 424-25 ("The Sentencing Guidelines apply . . . only to offenses committed after November 1, 1987.") (citations omitted).

The presentence report did not contain a Guidelines calculation.[4] It did not set out a quantity of narcotics. It

---

[4] The presentence report does refer to a worksheet that apparently contained a Guidelines computation, but no such

-5-

did not set forth a specific sentencing range, but recommended only "a substantial period of imprisonment." (PSR at 9). In the pre-Guidelines regimen in effect then, Judge Edelstein was authorized to sentence Torres-Nunez up to life imprisonment (see PSR at 1a), and in his discretion, and based on his knowledge of the facts and circumstances, he imposed a sentence that he believed was appropriate.

Finally, it should be noted that Torrs-Nunez is incorrect in his facts. As the judgment and commitment order makes clear, he was sentenced not to 470 months, but to 720 months -- sixty years -- of imprisonment.

## CONCLUSION

The motion for a reduction of sentence is denied, as Torres-Nunez is not eligible for resentencing under the recent retroactive amendments to the Guidelines.

SO ORDERED.

Dated: New York, New York
May 19, 2008

DENNY CHIN
United States District Judge

---

worksheet is attached. But even if such a worksheet had been prepared, it was provided to Judge Edelstein for informational purposes only, as the Guidelines simply did not apply.

-6-